AARON M. CLEFTON, Esq. (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 Broadway #1133
Oakland, CA 94612
Telephone: 510/832-5001
Facsimile: 510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
SIERRA FREDIANELLI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA FREDIANELLI,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JUDICIAL COUNCIL OF CALIFORNIA, ADMINISTRATIVE OFFICE OF THE COURTS; SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA; CONTRA COSTA COUNTY,<br><br>　　　　Defendants. | CASE NO.<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES FOR VIOLATIONS OF AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. § 12101** *et seq.***)**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

　　　　Plaintiff SIERRA FREDIANELLI complains of Defendants JUDICIAL COUNCIL OF CALIFORNIA, ADMINISTRATIVE OFFICE OF THE COURTS; SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA; CONTRA COSTA COUNTY, and alleges as follows:

　　　　1.　　**INTRODUCTION:** Plaintiff is a court courier for a reputable organization that provides courier services all over the Bay Area. As part of her job, Plaintiff must enter court houses to file documents, retrieve documents, and deliver documents. Plaintiff is always accompanied by her service dog Toast when she is working. Toast has accompanied her into

1

1  many court houses in the Bay Area including the ones in Contra Costa County.  However, due to
2  a recent policy change, Defendants do not allow service dogs to enter the Contra Costa County
3  Courthouse without being approved by their ADA coordinator, a discriminatory and paternalistic
4  policy and practice. Plaintiff has been denied access because she is a disabled individual who uses
5  a service dog to assist her with certain tasks to ameliorate her disability.

6  2. On or about June 11, 2024, disabled Plaintiff, Sierra Fredianelli was denied full
7  and equal access to the Contra Costa County Courthouse located at 751 Pine Street, Martinez,
8  California (the "Courthouse") because she was accompanied by her service dog.  Plaintiff was
9  working next door to the Courthouse retrieving some documents for a client from the Court
10 Records Department located at 1111 Ward Street, Martinez, California. Plaintiff needed to use the
11 restroom, but the building at 1111 Ward Street does not a have restroom that is open to the public.
12 Since it was her lunch break, Plaintiff went to the Courthouse located at 751 Pine Street,
13 Martinez, California, to use the restroom.  Plaintiff entered the building with Toast and attempted
14 to go through the metal detector at the security check point.   However, she was stopped by a
15 sheriff's deputy who said that she could not enter the Courthouse with her service dog until the
16 ADA coordinator came to the security check point to approve her service dog for entry into the
17 building.  Plaintiff explained that Toast is a service dog and should not need approval from
18 anyone to enter the building, but she agreed to wait for the ADA coordinator, despite her growing
19 need to use the restroom.  The sheriff's deputy tried to reach the ADA coordinator but could not.
20 Plaintiff explained that she and Toast had entered the Courthouse without approval from the ADA
21 coordinator previously, but the sheriff's deputy said he could not let her in with Toast without the
22 approval of the ADA coordinator each time she entered.  Plaintiff had a desperate need to use the
23 restroom, so ultimately, after waiting for around 15 minutes, she left to find a restroom elsewhere.

24 3. The Defendants' decision to exclude service dogs contravenes the Department of
25 Justice's technical assistance and guidance on the subject of "Service Animals."  In relevant part,
26 the guidance states:

27 - A person with a disability cannot be asked to remove his service animal from the
28   premises unless: (1) the dog is out of control and the handler does not take

1 effective action to control it or (2) the dog is not housebroken. When there is a
2 legitimate reason to ask that a service animal be removed, staff must offer the
3 person with the disability the opportunity to obtain goods or services without the
4 animal's presence.

5 DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-
6 animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these
7 requirements:

8 **Q17. Does the ADA require that service animals be certified as service**
9 **animals**?

10 A. No. Covered entities may not require documentation, such as proof that the
11 animal has been certified, trained, or licensed as a service animal, as a condition for
12 entry.

13 **There are individuals and organizations that sell service animal certification**
14 **or registration documents online. These documents do not convey any rights**
15 **under the ADA and the Department of Justice does not recognize them as**
16 **proof that the dog is a service animal.**

17 https://www.ada.gov/resources/service-animals-faqs/

18      4.      As a result of Defendant's unlawful acts, Plaintiff suffered denial of her civil rights
19 and suffered physical, mental and emotional damages.  Plaintiff has an ongoing need to return to
20 the Courthouse on a regular basis for her job.  She is often rushing to get court filings or courtesy
21 copies to the clerk's office in a timely manner.  She does not have time, nor should she legally be
22 required to wait, for the ADA coordinator to approve her service dog for entry into a government
23 facility such as a Courthouse.  Plaintiff will need to return to the Courthouse in the future for her
24 job.  She has brought this lawsuit to force Defendants to change their discriminatory and illegal
25 policies and to compensate her for refusing to allow him on the premises with her service dog.
26 Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when
27 accompanied by a qualified service dog at any of the Contra Costa County Superior Courthouses.
28      5.      **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC

1  sections 1331 and 1343

2  6. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is
3  proper because the real property which is the subject of this action is located in this district and
4  that Plaintiff's causes of action arose in this district.

5  7. **INTRADISTRICT:** This case should be assigned to the Oakland intradistrict
6  because the real property which is the subject of this action is located in this intradistrict and
7  Plaintiff's causes of action arose in this intradistrict.

8  8. **PARTIES:** Plaintiff Sierra Fredianelli is a "qualified" disabled person who uses
9  the assistance of a psychiatric service dog. Plaintiff has been diagnosed with post-traumatic stress
10 disorder (PTSD) with hypervigilance, major depressive disorder, and anxiety disorder. She also
11 suffers from Ehlers-Danlos Syndrome which causes her chronic pain. Plaintiff's disabling
12 conditions cause her to isolate herself from others and causes disabling panic attacks. When
13 Plaintiff experiences a panic attack her body temperature rises, she begins to sweat, her throat
14 tightens, and she experiences chest pains that feel like lightning piercing her chest. When Plaintiff
15 experiences a panic attack, she must cease all activity and isolate herself until she recovers.
16 Plaintiff's disability substantially limits her ability to interact with people (both friends and
17 strangers). Additionally, she has extreme difficulty sleeping, and she is hypervigilant in crowds
18 or when she is in a vulnerable state such as when using the restroom.

19 9. Plaintiff relies upon her service dog, a poodle mix named Toast to assist her with
20 certain tasks including alerting her to take her medication when she exhibits symptoms of a panic
21 attack by pawing her or ringing a bell on the bag where she keeps her medication. Toast is also
22 trained to interrupt harmful, repetitive behaviors that Plaintiff exhibits including scratching or
23 picking at her skin. Plaintiff has also trained Toast to provide crowd control by having him walk
24 in circles around her as they walk in a crowd and also positioning himself behind her with his
25 back toward Plaintiff when there is a person standing behind her in a line. Toast is also trained to
26 stand guard for Plaintiff when she is using a bathroom in an unfamiliar place. All of these tasks
27 Plaintiff has trained Toast to do on command and are not behaviors that Toast has ever engaged in
28 naturally or without training. Toast was individually trained to be a service dog, who has been

1  working with dogs in various capacities for over 12 years. Plaintiff used her knowledge of dogs
2  and online resources to train Toast on the tasks she needs him to perform.  Additionally, Plaintiff
3  continues to reinforce the training with Toast daily.  Plaintiff is a qualified person with a
4  disability as defined under federal and state law who is substantially limited in the major life
5  activities of interacting with other people, sleeping, and speaking due to severe social anxiety.  42
6  U.S.C. § 12102, 29 U.S.C. § 705(9)(B). Photos depicting Toast similar to how he appeared on the
7  date of the incident are below:




10.  Defendants JUDICIAL COUNCIL OF CALIFORNIA, ADMINISTRATIVE OFFICE OF THE COURTS; SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA; CONTRA COSTA COUNTY, public entities subject to Title II of the ADA, and to all other federal legal requirements referred to in this complaint. Defendants are responsible for providing services at and maintaining the policies at the Court House building located at 751 Pine Street, Martinez, California 94553.

11.  **FACTUAL STATEMENT:**  Plaintiff Sierra Fredianelli has been working with her service dog Toast for four years.  Toast is a poodle mix who was individually trained to be a

service dog to perform tasks to assist with Plaintiff's disabilities. Plaintiff has trained and continues to train Toast to serve her specific needs throughout their relationship through a series of commands and gestures. Toast is specifically trained to assist Plaintiff with relieving her psychiatric symptoms to reduce the chances she will suffer a debilitating panic attack or engage in harmful, repetitive behaviors.

12. Plaintiff has trained Toast to do several tasks he would not otherwise know but for his training. Toast is specifically trained to alert Plaintiff to take her medication when she exhibits symptoms of a panic attack. He alerts Plaintiff by pawing her or ringing a bell on the bag where she keeps her medication. Plaintiff trained Toast to perform this task by using positive reinforcement techniques. She trained him to touch the medication bottle with his nose. When he did, she would give him treats and praise. Then, she moved the bottle to a pocket inside her bag and she trained toast to nose at that pocket. Then she trained Toast to nose or paw at the pocket where she keeps the medication while Plaintiff mimicked the behaviors that she exhibits during a panic attack in order to link the behavior of nosing/pawing at the medication to those symptoms. Toast is also trained to interrupt harmful, repetitive behaviors that Plaintiff exhibits including scratching or picking at her skin. Again, Plaintiff used positive reinforcement and mimicking repetitive behaviors to train Toast to interrupt her actions. Plaintiff has also trained Toast to provide crowd control by having him walk in circles around her as they walk in a crowd and also positioning himself behind her with his back toward Plaintiff when there is a person standing behind her in a line. In order to train this task, Plaintiff used treats to lead Toast around her body while she was walking so that Toast would circle her. Now Toast will perform that task with a hand signal rather than a treat. Toast is also trained to stand guard for Plaintiff when she is using a bathroom in an unfamiliar place.

13. Toast is a working dog; he is not a pet. Plaintiff and Toast have trained extensively together, and they supplement that training daily. Plaintiff takes Toast everywhere with her in public. It is important they stay together as much as possible because (a) Toast provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. With few exceptions, where Plaintiff

goes, Toast goes.

14. Plaintiff works as a court courier for a reputable company in the Bay Area. She must travel to courthouses around the bay area to file documents, deliver courtesy copies of documents to the clerk, and generally perform her duties as a courier. On June 11, 2024, Plaintiff was working next door to the Courthouse retrieving some documents for a client from the Court Records Department located at 1111 Ward Street, Martinez, California. Plaintiff needed to use the restroom, but the building at 1111 Ward Street does not have a restroom that is open to the public, so on her lunch break, Plaintiff went to the Courthouse located at 751 Pine Street, Martinez, California, to use the restroom.

15. Plaintiff entered the building with Toast and attempted to go through the metal detector at the security check point. However, she was stopped by a sheriff's deputy who said that she could not enter the Courthouse with her service dog unless the ADA coordinator came to the security check point to approve her service dog for entry into the building. Plaintiff explained that Toast is a service dog and should not need approval from anyone to enter the building, but she agreed to wait for the ADA coordinator to approve her.

16. The sheriff's deputy tried to reach the ADA coordinator but could not. Plaintiff explained that she and Toast had entered the Courthouse without the ADA Coordinator' approval many times before, but the sheriff's deputy said he could not let her in with Toast without the approval of the ADA coordinator *each time* she entered.

17. Plaintiff waited for about 10 minutes while the deputies attempted to reach the ADA coordinator, and then she essentially begged the deputies to allow her to enter the Courthouse with Toast to use the restroom. The deputies still denied her. Plaintiff calmly explained that *these same deputies had let her and Toast into the Courthouse the day before without any issue*, and although the deputies admitted that they recognized Plaintiff and Toast, they refused to allow her to enter without approval from the ADA coordinator. The decision evidenced a change in policy that meant this was not a onetime denial, but something she would encounter each time she came back to the Court.

18. Plaintiff waited around for approximately another five minutes. However, it

became clear that she would not be allowed in with Toast without approval from the ADA coordinator who the deputies informed her was likely at lunch. Plaintiff had a desperate need to use the restroom, so ultimately after waiting for around 15 minutes she left to find a restroom elsewhere.

19. Plaintiff left the Courthouse without being allowed entry and still desperately needing to use the restroom. Plaintiff was extremely upset, and she had to find porta potty at a nearby park to use.  She was experiencing symptoms of a panic attack, but luckily Toast was able to alert her so that she could calm herself down.

20. Plaintiff will have the need to return to the Courthouse for her work, but it is only safe for her to do so *after* Defendant has implemented proper service animal policies and training of their staff.  Plaintiff is deterred from returning to the Courthouse until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq*.)**

21. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 20, above, and incorporates them herein by reference as if separately repled hereafter.

22. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

23. At all times herein mentioned, Plaintiff was entitled to the protections of the

1   "Public Services" provisions of Title II of the ADA, Subpart A, which prohibits discrimination by
2   any public entity as defined by 42 USC section 12131.  Pursuant to 42 USC 12132, section 12132
3   of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded
4   from participation in or be denied the benefits of the "services, programs or activities" of a public
5   entity, or be subjected to discrimination by such entity.  Plaintiff was at all times relevant herein a
6   qualified individual with a disability for all purposes under the ADA.

7   24.   In violation of Title II of the ADA, Defendants have failed to ensure that
individuals with disabilities such as the Plaintiff herein are not excluded from "services, programs
and activities" at the subject facilities and property.  By reason of Defendants' failure to remove
policy barriers to access at the subject facilities so as to render them "accessible to and useable
by" disabled persons who use service dogs, despite actual notice of the inaccessible conditions,
and by its policy decisions as above-described, including acts and omissions by any predecessors
in interest, Defendants have discriminated against Plaintiff in violation of Title II of the ADA and
the regulations adopted to implement the ADA.  With relation to damages claimed under Title II
of the ADA, each such instance of discrimination is alleged to have been intentional and/or has
been created and maintained with deliberate indifference to the effect upon Plaintiff and other
similarly disabled persons.  Further, Defendants continue to maintain the barriers to access at the
Courthouse despite notice from Plaintiff of those barriers.

19   25.   As a result of such intentional discrimination, in violation of section 12132 of the
ADA, Plaintiff is entitled to the remedies, procedures and rights set forth in section 505 of the
Rehabilitation Act of 1973 (29 USC 794a), as provided by section 12133 of the ADA.

22   26.   On information and belief, to the date of filing of this Complaint, Defendants have
failed to make the facilities and property as described herein accessible to and usable by
physically disabled persons who use service animals, as required by law, and have failed to adopt
policies to assure that disabled persons are provided full and equal access, including policies and
regulations protecting the use of service dogs in public accommodations.

27   27.   Plaintiff requests that an injunction be ordered requiring that Defendants make all
such facilities and properties herein described accessible to and usable by mobility impaired

disabled persons and their service dogs.

28. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

29. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

30. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

31. Defendants have a policy and practice of denying, restricting and delaying access to guests with service animals. The Defendants' decision to exclude service dogs contravenes the Department of Justice's technical assistance and guidance on the subject of "Service Animals." In relevant part, the guidance states:

- A person with a disability cannot be asked to remove his service animal from the premises unless: (1) the dog is out of control and the handler does not take effective action to control it or (2) the dog is not housebroken. When there is a legitimate reason to ask that a service animal be removed, staff must offer the person with the disability the opportunity to obtain goods or services without the animal's presence.

DOJ 2010 "Service Animal" guidance available at https://www.ada.gov/resources/service-animals-2010-requirements/. Similarly, the DOJ's FAQs regarding Services Animals mirror these

requirements:

> **Q17. Does the ADA require that service animals be certified as service animals?**
>
> A. No. Covered entities may not require documentation, such as proof that the animal has been certified, trained, or licensed as a service animal, as a condition for entry.
>
> **There are individuals and organizations that sell service animal certification or registration documents online. These documents do not convey any rights under the ADA and the Department of Justice does not recognize them as proof that the dog is a service animal.**

https://www.ada.gov/resources/service-animals-faqs/

32. On information and belief, as of the date of Plaintiff's most recent visit to the Courthouse on or about June 11, 2024, Defendants continue to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendants' premises, in violation of the ADA.

33. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

34. **DAMAGES:** Damages are available under Title II of the ADA upon a showing of

intentional discrimination. *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2); *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *Alexander v. Sandoval*, 531 U.S. 1049, 1517 (2001). In order to prove intentional discrimination, Plaintiff must show that Defendants acted with "deliberate indifference" in violating his rights under Title II of the ADA. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

> Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1988) . . . When the plaintiff has alerted the public entity to his need for accommodation (**or where the need for accommodation is obvious, or required by statute or regulation**), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.

*Id.* 260 F.3d at 1139.

35. Defendants have a statutory duty to ensure that its programs are readily accessible to persons with disabilities who use service dogs such as Plaintiff. 29 C.F.R. § 35.130(b)(7); *Fry v. Napoleon Community Schools*, 137 S.Ct. 743, 749-750 (2016) (citing *Sullivan v. Vallejo City Unified School Dist.*, 731 F. Supp. 947, 961-962). Defendants refused to allow Plaintiff to use the services at the Courthouse with her qualified service dog despite Plaintiff's clear explanation and Defendants' employees actual knowledge that Toast is a service dog and her repeated requests that he be allowed inside the facility with her service dog. The need for accommodation in this matter is both "clearly obvious" and "required by statute or regulation," and therefore meets and likely exceeds the standard for an award of damages under the deliberate indifference standard. *Duvall*, 260 F.3d at 1139. Further, Defendants was on *actual* notice of the need for accommodation because Plaintiff explicitly informed Defendants' employees that she needed an accommodation to allow her inside the Courthouse with her service dog due to her disability. Defendants received this information and among the possible alternatives available, they then deliberately denied Plaintiff access to the Courthouse.

36. Defendants' establishment of their discriminatory policy to deny, restrict, and delay entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate intentional discrimination toward Plaintiff and deliberate indifference

1  for her rights and safety.  Plaintiff suffered damages as above described as a result of Defendants'
2  violations.  Damages are ongoing based on his deterrence from returning to the Courthouse.
3     WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

5     Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this
6  Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the
7  unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless
8  Plaintiff is granted the relief he requests.  Plaintiff and Defendant have an actual controversy and
9  opposing legal positions as to Defendant's violations of the laws of the United States and the
10 State of California. The need for relief is critical because the rights at issue are paramount under
11 the laws of the United States and the State of California.
12    WHEREFORE, Plaintiff Paul Spector prays for judgment and the following specific
13 relief against Defendant:
14    1. An order enjoining Defendants, their agents, officials, employees, and all persons
15 acting in concert with them:
16     a. From continuing the unlawful acts, conditions, and practices described in this
17      Complaint;
18     b. To modify their policies and practices to accommodate service dog users in
19      conformity with federal and state law, and to advise Plaintiff that her service dog
20      will not be excluded, and she will not require approval of the ADA coordinator or
21      any other of Defendants' agents, officials, or employees to enter the premises with
22      her service dog when she returns to Contra Costa County Superior Court House;
23     c. That the Court issue preliminary and permanent injunction directing Defendants as
24      the public entity responsible for the policies and practices related to providing full
25      and equal access to all persons, including persons with physical disabilities; and
26      issue a preliminary and permanent injunction pursuant to ADA section 12188(a)
27      and state law directing Defendants to provide facilities usable by Plaintiff and
28      similarly situated persons with disabilities, and which provide full and equal

access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendants' employees and agents in how to recognize disabled persons and accommodate their rights and needs;

    d.  An order retaining jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of all appropriate damages, including but not limited to statutory damages, general damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses; and

4. Grant such other and further relief as this Court may deem just and proper.

Date: July 1, 2024                                                         REIN & CLEFTON

                                                                         */s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
SIERRA FREDIANELLI

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: July 1, 2024                                                         REIN & CLEFTON

                                                                         */s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
SIERRA FREDIANELLI